UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY SCOTT BETHEA, | : | CIVIL NO: 1:13-CV-01694 |
| Petitioner | : | |
| | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| SUPERINTENDENT BICKELL, | : | |
| Respondent | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

In this habeas corpus case, the petitioner, Gregory Scott Bethea, claims that the Pennsylvania Board of Probation and Parole denied him parole in violation of his right to substantive due process and improperly calculated his maximum parole-violation sentence in violation of his right to equal protection.   Because Bethea has been paroled, his claim based on the denial of parole is moot, and his claim that the Board improperly calculated his sentence in violation of his right to equal protection is without merit.   Thus, we recommend that the petition be denied and that the case file be closed.

## II. Background and Procedural History.

While still a state prisoner, Bethea, proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.   In accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), we warned Bethea of the effects of filing a § 2254 petition in light of the Antiterrorism and Effective Death Penalty Act, and we directed him to complete an election form, indicating an election to have the petition construed and ruled upon under 28 U.S.C. § 2254 or to withdraw the current petition. Bethea responded by stating that he wished to proceed under 28 U.S.C. §2254, but he wanted to amend his petition to add an additional claim.   Given his election, we granted Bethea leave to file an amended petition, and Bethea filed an amended petition, which we ordered served on the respondent.   The respondent responded to the amended petition, and Bethea filed a reply.   In his reply, Bethea pointed out that the respondent only responded to the claim in his amended petition and did not respond to the claim in his original petition.   This is understandable because the respondent was served with only the amended petition.   An amended petition completely replaces the original petition, and when the court granted Bethea leave to file an amended petition we expected him to include all his claims in the amended petition.   Bethea misunderstood: he included one claim in his amended petition, but he also intended to proceed on the claim in his original petition as well.   Given this

2

misunderstanding, we granted Bethea leave to file a second amended petition that contained all his claims.

On October 29, 2013, Bethea filed his second amended petition raising two claims: (1) the Pennsylvania Board of Probation and Parole (Board) violated his right to equal protection by improperly calculating his sentence; and (2) the Board denied him substantive due process by denying him parole.   After the respondent responded to the second amended petition and Bethea filed a reply, Bethea notified the Court that his address had changed.   By an Order dated October 14, 2014, because it appeared that Bethea had been released from custody, we directed the parties to file supplemental briefs addressing whether one or both of Bethea's claims are moot.   The respondent filed a document titled as a motion to dismiss arguing that one of Bethea's claims is moot, and we construed that document as the respondent's supplemental brief.   Bethea then filed a supplemental brief regarding the mootness issue.

The habeas petition is ripe for decision, and, as discussed below, we conclude that Bethea's claim based on the denial of parole is moot and his claim based on the Board's calculation of his sentence is without merit.

## III.   Discussion.

### A.   Bethea's Claim that the Board Denied him Substantive Due Process by Denying him Parole is Moot.

By a decision dated June 24, 2014, the Board decided to parole Bethea, and it noted that Bethea's parole-violation maximum date is January 8, 2017. *Doc. 31-1* at 2-4.   On August 7, 2014, Bethea was actually released on parole. *Id.* at 6.   Because Bethea has been released on parole, his claim that the Board violated substantive due process by denying him parole is moot.

Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011)(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).   "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)(quoting *Lewis,* 494 U.S. at 477).   "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of

Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013)(quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)).

A habeas corpus petition challenging an underlying criminal conviction is not rendered moot by the petitioner's release from custody after its filing so long as there are collateral consequences that flow from the criminal conviction. *Spencer v. Kemna,* 523 U.S.1, 12 (1998).   With respect to his parole claim, Bethea is not challenging his conviction or sentence.   Rather, he is challenging the Board's denial of parole and he seeks immediate release on parole.   But since Bethea has been released on parole—the very relief that he requested in his petition—this court cannot provide him any relief on this habeas claim.   So, as the respondent argues and as Bethea concedes, this claim is now moot. *See Razzoli v. FCI Allenwood*, 200 F. App'x 166, 169 (3d Cir. 2006)(stating that "[t]hrough the passage of time Razzoli has been released on parole, thereby obtaining the relief that he sought through habeas" and holding that Razzoli's claims that his release on parole was illegally delayed are moot).

**B.   Bethea Is Not Entitle to Habeas Corpus Relief as to his Claim that the Board Violated his Right to Equal Protection in Calculating his Maximum Sentence and Not Granting him Credit for Time Served on Parole.**

Although Bethea has been released on parole, the Board has calculated his parole-violation maximum date as January 8, 2017.   The respondent does not argue that Bethea's claim regarding the Board's calculation of his sentence is moot, and given that under that calculation Bethea will remain under parole supervision until January 8, 2017, we conclude that Bethea's claim based on the Board's calculation of his sentence is not moot.   Nevertheless, Bethea is not entitled to relief on that claim.

**1.   Bethea's Parole and Criminal History and the Board's Calculation of His Parole-Revocation Sentence.**

Bethea claims that the Board failed to credit his sentence for the time from November 12, 2009 until February 18, 2011.   To understand the basis for Bethea's claim, we briefly set forth the relevant history surrounding Bethea's criminal and parole history and the Board's calculation of Bethea's sentence.

In 1988, Bethea was convicted of various charges in Philadelphia County and sentenced to a total term of imprisonment of Eight to Eighteen years. *Doc. 23-1* at 2-3.   In 1997, he was released on parole. *Id.* at 7-9.   Bethea's freedom was short-lived, however, as the Board declared him delinquent in March of 1998, and, a

6

few months later, it detained him pending the disposition of new criminal charges and recommitted him to prison as a technical parole violator. *Id.* at 15-17.

In April of 1999, Bethea was convicted in the Court of Common Pleas of Berks County of terroristic threats and carrying a firearm without a license, and, according to Bethea, he was sentenced to a total term of imprisonment of six to twelve years with a maximum sentence date of December 8, 2013. *Id.* at 19-22 and *Doc. 21* at 6.   After that conviction, the Board issued a decision to recommit Bethea as a convicted parole violator in addition to its earlier decision to recommit him as a technical parole violator. *Doc. 23-1* at 24-25.   In 2002, the Board paroled Bethea to his "state detainer sentence" *Id.* at 29-33.   And, in September of 2007, the Board issued a decision paroling Bethea on or after December 7, 2007 to a community corrections residence. *Id.* at 35-37.   Bethea was not actually released, however, until January 28, 2008. *Id.* at 41.   At that time, the Board calculated his maximum sentence date as December 8, 2013. *Id.* at 39 & 41.

Again, Bethea's time on parole was short: In February of 2008, the Board again declared Bethea delinquent and, on October 29, 2009, the Board issued a warrant to commit and detain him. *Id.* at 46 and *Doc. 21-1* at 3.   In December of 2009, the Board issued an order to recommit Bethea "as a technical a parole violator to serve 12 months backtime when available pending resolution of . . . new criminal

charges." *Doc. 23-1* at 48.   The new criminal charges referred to by the Board were charges against Bethea in the Court of Common Pleas of Lancaster County. According to Bethea, he was arraigned on those charges on November 12, 2009, and bail was set at $250,000. *Doc. 23* at 7.   Because Bethea could not post bail, he remained in the custody of the Department of Corrections until February 18, 2011, when he was transferred to the Lancaster County Prison. *Id.*

On March 14, 2011, Bethea pleaded guilty to some of the Lancaster County charges and other of those charges were dismissed. *Doc. 23-1* at 51-54.   The one-page plea agreement contains a note at the bottom that reads: "Aggregate sentence is TS-23 months +2 years probation, Time credit for the purposes to the time served sentencs [sic] to run from 2/18/11 to present." *Doc. 21-1* at 8.   Judge Knisely sentenced Bethea to an aggregate sentence of time served to 23 months plus two years of probation. *Doc. 23-1* at 51-54.   Attached to the sentencing order is a page titled "Sentencing Conditions Order," which has various boxes that can be checked. *Id.* at 54.   One of those boxes reads:   "Credit for time served _____ (subject to verification)" *Id.*   There is an "X" next to that box and "2/18/11 to present" is handwritten on the blank line. *Id.*   The Sentencing Order also provides that Bethea is immediately paroled "to detainer." *Id.*   Bethea filed a Post Conviction Relief Act petition, which, by an Order dated July 15, 2011, Judge Knisely granted "insofar as

the Department of Corrections shall clearly grant the time credit from February 18, 2011 to March 14, 2011, as agreed upon in the Plea Agreement and as reflected in the Court's Sentencing Conditions Order . . . ." *Doc.21-1* at 11.

In July of 2011, the Board decided to recommit Bethea as a convicted parole violator as well as a technical parole violator, and the Board calculated Bethea's maximum sentence date as January 8, 2017. *Doc. 23-2* at 2.   Contesting the Board's calculation of his parole-violation maximum sentence and his parole review date, Bethea filed a petition for administrative review, which the Board denied. *Doc. 23-2* at 8-9.   Bethea then filed a petition for review with the Commonwealth Court of Pennsylvania, and on August 20, 2012, the Commonwealth Court affirmed the Board's decision. *Doc. 23-2* at 35-42.   In February of 2013, the Supreme Court of Pennsylvania denied Bethea's petition for allowance of appeal. *Id.* at 69.

In the meantime, the Board denied Bethea parole in June of 2012. *Doc. 23-2* at 33.   In June of 2013, the Board again denied Bethea parole, but, as noted above, in June of 2014, the Board decided to parole Bethea. *Id.* at 71 and *Doc. 31-1* at 2-4. And, on August 7, 2014, Bethea was actually released on parole. *Id.* at 6.

9

## 2.   Bethea's Claim and Arguments.

Bethea claims that the Board failed to credit his sentence for the time from November 12, 2009 (the date he was arraigned on the new Lancaster County criminal charges) until February 18, 2011 (the date he was transferred to the Lancaster County Prison), a total of 463 days.   He contends that during those 463 days he was in custody because of both the Board's detainer and the new Lancaster County criminal charges.   He contends that, contrary to the Board's conclusion, he was not given credit toward his Lancaster County sentence for the 463 days at issue. Thus, according to Bethea, he is entitled to have those 463 days credited toward his parole-violation maximum.

Bethea cites *Martin v. Pennsylvania Bd. of Prob. & Parole,* 840 A.2d 299, 309 (Pa. 2003), which held that "where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence" and that "the indigency of a detainee in failing to satisfy the requirements for bail is not determinative as to whether the offender receives credit for time served."   In that case, Martin was charged with new crimes while he was on parole, and he was in custody for almost 14 months on both a Board detainer and, because he failed to post bail, on the new criminal charges.   He was later sentenced on the new criminal charges to 48 hours

10

time served.   The Board revoked Martin's parole and in calculating his

parole-violation maximum failed to give him credit for the fourteen months he was

in custody under both the Board's detainer and the new criminal charges.   After

noting that the Pennsylvania statute regarding credit for pretrial detention—42

Pa.C.S. § 9760—does not address the issue of credit for time served following a

parole violation and revocation, the *Martin* court stated that "[i]t is well established

that there is no constitutional right to pre-sentence confinement credit and that credit

statutes stem principally from the recognition that pre-sentence detention is often the

result of indigency." *Id.* at 597-98.   The *Martin* court then considered its decision in

*Gaito v. Pennsylvania Bd. of Prob. & Parole*, 412 A.2d 568 (1980), which held:

> [I]f a defendant is being held in custody solely because of
> a detainer lodged by the Board and has otherwise met the
> requirements for bail on the new criminal charges, the time
> which he spent in custody shall be credited against his original
> sentence.   If a defendant, however, remains incarcerated prior to
> trial because he has failed to satisfy bail requirements on the new
> criminal charges, then the time spent in custody shall be credited
> to his new sentence.

*Gaito,* 412 A.2d at 571.   The *Gaito* court also noted, however, that "if a parolee is

not convicted, or if no new sentence is imposed for that conviction on the new

charge, the pre-trial custody time must be applied to the parolee's original sentence."

*Id.* at n.6.   The *Martin* court then reviewed a line of Commonwealth Court cases

culminating in *Berry v. Pennsylvania Bd. of Prob. & Parole*, 756 A.2d 135 (Pa.

Commw. Ct. 2000), which construed the noted exception to the general rule in *Gaito*

narrowly as allowing the Board to credit time served under both a Board detainer

and new criminal charges to the original parole-revocation sentence only when the

there is no new conviction or no new sentence. *Martin,* 840 A.2d at 305-308.   The

*Martin* court disagreed with that narrow reading of *Gaito,* and held that "all time

spent in confinement must be credited either to the new sentence or the original

sentence." *Id.* at 309.   The court observed:

> Were [Martin] here to serve the full term of his sentence,
> he would be imprisoned for one year, one month, and nineteen
> days in excess of that of an individual similarly situated who was
> able to post bail.   Such a disparity can have no conceivable
> penological justification.   There are two purposes for awarding
> pre-sentence credits: (1) eliminating the unequal treatment
> suffered by indigent defendants who, because of their inability to
> post bail, may serve a longer overall confinement for a given
> offense than their wealthier counterparts; and (2) equalizing the
> actual time served in custody by defendants convicted of the
> same offense.   These purposes are not met when an indigent
> detainee is denied credit for serving time on both a Board
> detainer and new criminal charges solely because the detainee
> does not have the financial resources to satisfy bail requirements.
> To the extent that decisions in this Commonwealth have held to
> the contrary, they are disapproved.

*Id.* at 309.   The Martin court reversed the Commonwealth Court's decision and

remanded for recalculation of the Martin's maximum release date. *Id.*

Bethea also cites *Hears v. Pennsylvania Bd. of Prob. & Parole,* 851 A.2d

1003 (Pa. Commw. Ct. 2004), a case in which the Commonwealth Court, relying on

12

*Martin,* held that the Board erred in failing to credit Hears's parole-revocation maximum for time that Hears was in custody under both new criminal charges and the Board's detainer.   In that case, Hears was sentenced on the new criminal charges to four days incarceration, but he had been in custody under the Board detainer and the new charges for much longer than four days.   The Board refused, however, to credit Hears's parole-violation sentence with that excess time, and relying on *Martin*, the Commonwealth Court vacated the Board's decision and remanded the matter to the Board to recalculate Hears's maximum term.

Bethea contends that he is similarly situated to the petitioners in the *Martin* and *Hears* cases, and he contends that the Board should have granted him credit toward his parole-revocation maximum for the 463 days that he was in custody under both the new Lancaster County criminal charges and the Board's detainer.

### 3.   The Commonwealth Court's Decision.

The Commonwealth Court held that the Board did not err in not crediting Bethea's original sentence because the time sought by Bethea was allocated to his new Lancaster County sentence. *Bethea v. Pennsylvania Bd. of Prob. & Parole,* No. 1829 C.D. 2011, 2012 WL 8693787, at *3 (Pa. Commw. Ct. Aug. 20, 2012).   The Commonwealth Court reasoned:

Bethea's sentencing order is less than pellucid.   Three pages of the sentencing order, which list each charge and its disposition, contain the following statement at the bottom of the page: "aggregate sentence of time served to 23 months."   On page 4, the Sentencing Conditions Order, the box entitled "time served" is checked with the troublesome notation "2/18/11 to present." C.R., Item No. 9, Sentencing Order at 4.   It is not clear what that notation means or who wrote it; the date "2/18/11" relates to nothing else in the record.

Bethea beieves that the "2/18/11 to present' notation trumps the other provisions in the sentencing order that recorded his sentence as being for all "time served to 23 months."   The Board relied on the expanded hand-written statement of his sentence, not the "2/18/11 to present" notation on page 4, when it construed the terms of Bethea's new sentence.   Thus, the Board calculated Bethea's maximum sentence date on his new sentence on the assumption that Bethea had served 487 days of that sentence.   Bethea is not entitled to 487[1] days of credit on his original sentence.   Further, he is not entitled to have those 487 days moved from his new sentence to his original sentence.

If Bethea believes there is an error in the sentencing order, his exclusive remedy lies with the trial court or in an appeal to the Superior Court.   If he believes there is no error, but that the order has been incorrectly construed, then he should seek clarification from the sentencing court.   We cannot say, however, that the Board has misconstrued the sentencing order, which states, three times, that he was given an aggregate sentence of time served to 23 months.

*Id.* (citation omitted).

---

[1]   In this habeas case, Bethea is seeking only 463 days of credit toward his parole-violation sentence.   The Commonwealth Court's reference to 487 days apparently includes the days from February 18, 2011 until March 14, 2011.   But as those days were clearly credited toward Bethea's Lancaster County criminal sentence, Bethea is not seeking credit toward his parole-revocation maximum for those days.

### 4.   Bethea Procedurally Defaulted his Equal Protection Claim.

Although Bethea frames his claim here as an equal protection claim, in his petition for review before the Commonwealth Court, he did not mention equal protection.   Rather, there he merely claimed that that the Board erred in calculating his sentence. *See* Doc. 23-2 at 11-12.[2]

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan,* 132 S.Ct. 1309, 1316 (2012).   One of these rules is that a state prisoner must exhaust available state remedies before filing a petition for habeas corpus in federal court. 28 U.S.C. § 2254(b) and (c).   The exhaustion requirement serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *O'Sullivan v.*

_____

[2] A federal court may entertain a petition for a writ of habeas corpus from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).   Thus, federal habeas corpus relief does not lie for errors of state law. *Id*. at 67.   Accordingly, even if Bethea could show that the Board incorrectly calculated his sentence in violation of Pennsylvania law, he would not be entitled to a writ of habeas corpus.

*Boerckel*, 526 U.S. 838, 844 (1999)("Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").   "The exhaustion rule also serves the secondary purpose of facilitating the creation of a complete factual record to aid the federal courts in their review." *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995).   A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies. *O'Halloran v Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).   The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

In order to exhaust state remedies for federal habeas corpus purposes, a petitioner must show that he fairly presented his federal claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).   The fair-presentation requirement provides the State the opportunity to consider and correct an alleged violation of a prisoner's federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995).   "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at 365-66.   "It is not enough that

16

all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(citations omitted).   Rather, for a claim to have been fairly presented to the state courts, both the legal theory and the facts supporting the claim must have been presented to the state courts. *O'Halloran*, 835 F.2d at 508.

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*   Although to meet the fair-presentation requirement, a petitioner need not cite '"book and verse"' of the federal constitution, "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard*, 404 U.S. at 278.   "A petitioner can 'fairly present' his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused. *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002); *See also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'").   The issue then becomes one of procedural default.   A procedural default occurs when a prisoner's claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. *Martinez,* 132 S.Ct. at 1316.   A procedural default generally bars a federal court from reviewing the merits of a habeas claim that the prisoner procedurally defaulted in state court. *Id.; Munchinski v. Wilson,* 694 F.3d 308, 332 (3d Cir. 2012).   "Grounded in principles of comity and federalism, the procedural default doctrine prevents a federal court sitting in habeas from reviewing a state court decision that rests on a state law ground 'that is sufficient to support the judgment,' when that state law ground 'is independent of the federal question and

adequate to support the judgment.'" *Munchinski,* 694 F.3d at 332-33 (quoting

*Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).   "In such situations, 'resolution

of any independent federal ground for the decision could not affect the judgment and

would therefore be advisory.'" *Id.* at 333.

There are, however, exceptions to the bar on consideration of procedurally

defaulted claims. *Martinez,* 132 S.Ct. at 1316.   A federal court may consider the

merits of a procedurally defaulted habeas claim in two situations: (1) the petitioner

establishes cause for the default and actual prejudice as a result of the alleged

violation of federal law; or (2) the petitioner demonstrates that failure to consider the

claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

"To show cause and prejudice, 'a petitioner must demonstrate some objective factor

external to the defense that prevented compliance with the state's procedural

requirements.'" *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002)(quoting

*Coleman*, 501 U.S. at 753).   "To show a fundamental miscarriage of justice, a

petitioner must demonstrate that he is actually innocent of the crime by presenting

new evidence of innocence." *Keller v. Larkins,* 251 F.3d 408, 415–16 (3d Cir. 2001)

(citation omitted).

Although the respondent does not argue procedural default, the Court has

discretion to raise procedural default *sua sponte. Sweger v. Chesney*, 294 F.3d 506,

19

520 (3d Cir. 2002).   Here, Bethea procedurally defaulted his equal protection claim

by failing to timely raise it to the state court,[3] and there is no basis to infer that

Bethea can show either cause and prejudice or a fundamental miscarriage of justice

to excuse his procedural default.[4]

---

[3]   A petitioner seeking to challenge a decision of the Board regarding parole revocation or related issue is first required to challenge the Board's decision by filing a petition for administrative review with the Board within thirty days of the mailing date of the Board's determination. *See* 37 Pa.Code § 73.1.   After that, if unsuccessful, the petitioner must appeal the Board's decision to the Commonwealth Court. See 42 Pa. Cons.Stat. § 763(a).   And from there, a petitioner must file a petition for allowance of appeal with the Pennsylvania Supreme Court. *See* 42 Pa. Cons.Stat. § 724; *Williams v. Wynder,* 232 F. App'x 177, 181 (3d Cir. 2007). Although Bethea followed these steps, he did not raise his equal protection claim in the state courts.   His time to do so has passed, and the time-bar under state law is an adequate and independent state ground barring federal habeas review of his claim.

[4] To the extent that Bethea is entitled to notice and an opportunity to respond to the Court raising the issue of procedural default *sua sponte* and to show a basis for excusing default, the report and recommendation procedure with its opportunity to file objections provides such notice and opportunity to be heard. *Ortiz v. Sauers*, No. 5:12-CV-1209, 2014 WL 1096177, at *2 (E.D. Pa. Mar. 19, 2014)(citing cases and stating that "the court believes that petitioner's right to file objections to the Report and Recommendation afforded him an adequate opportunity to apprise the court of any 'cause and prejudice' or 'fundamental miscarriage of justice'").

### 5.   Bethea's Equal Protection Claim Fails on the Merits.

The respondent addressed Bethea's equal protection claim on the merits arguing that Bethea has not alleged that he has been treated differently from similarly situated persons.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).   Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory.   The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race. *See, e.g., id.; McLaughlin v. Florida,* 379 U.S. 184, 192 (1964).   To assert a protected-class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. *See Oliveira v. Twp. of Irvington,* 41 F. App'x 555, 559 (3d Cir. 2005) (observing that a prima facie case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"). Under this theory, a plaintiff "must prove the existence of purposeful

discrimination" by the defendants. *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows that the defendant engaged in irrational and intentional differential treatment of him when compared with similarly situated individuals. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).   This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).   To prevail on a class-of-one claim, the plaintiff must demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. *Hill,* 455 F.3d at 239.

Bethea cannot establish an equal protection claim.   The Commonwealth Court correctly observed that the Lancaster County sentence was not clear, but it also reasonably concluded that the Board had properly construed the record with regard to that sentence as providing Bethea with credit toward his Lancaster County sentence for the 463 days that he seeking credit toward his parole-violation maximum.   While Bethea correctly observes that the Commonwealth Court failed

to note that he sought clarification from the sentencing court and the sentencing court granted his PCRA petition insofar as it ordered the Department of Corrections to grant time credit from February 18, 2011 to March 14, 2011. *Doc.21-1* at 11.   But the order regarding Bethea's PCRA petition does not clarify the underlying sentence:   It does not mention the period at issue here—November 12, 2009 to February 18, 2011.

Bethea contends that he is similarly situated to the petitioners in *Martin* and *Hears*.   But it was clear that the petitioners in the *Martin* and *Hears* cases were not given credit for the time at issue toward their new criminal sentence.   Here, it is not clear that Bethea was not given credit for the time at issue toward his Lancaster County criminal sentence, and, in fact, as discussed above, it was reasonable for the Board to conclude that he was granted such credit toward his Lancaster County criminal sentence.   While the cases cited by Bethea establish that because he was in custody during the time at issue both as result of the new criminal charges and as a result of the Board's detainer, he is entitled to credit toward either his new criminal sentenced or his parole-revocation maximum for that time period.   He is not, however, entitled to credit for that time period toward both sentences.   In sum, Bethea has not shown that he was treated differently than other similarly situated individuals.   Nor, given the ambiguous nature of his Lancaster County sentence,

23

can he show that the Board purposely discriminated against him, intentionally

treated him differently than the petitioners in the *Martin* and *Hears* cases, or that

there was no rational basis for any difference in treatment.   Accordingly, Bethea

cannot establish his equal protection claim, and he is not entitled to a writ of habeas

corpus.

## IV. Recommendation.

Accordingly, for the foregoing reasons, it is recommended that the petition for

a writ of habeas corpus be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.   Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.   The briefing
requirements set forth in Local Rule 72.2 shall apply.   A judge shall
make a de novo determination of those portions of the report or
specified proposed findings or recommendations to which objection is
made and may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.   The
judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.   The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of March, 2015.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge